## U.S. DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Christopher Demitry

6779 Kirk Lane

Warrenton, Virginia 20187

7039157321

VS.

Fauquier County Government

10 Hotel Street

Warrenton, Virginia 20186

Snow Hill Corporation

SFMC Management Group

9464 Innovation Drive

Manassas, Virginia 20110

Virginia Department of Transportation

1401 E. Broad Street

Richmond, Virginia 23219

Case: 1:18−cv−01177
Assigned To : Friedrich, Dabney L.
Assign. Date : 5/18/2018
Description: Pro Se Gen. Civ. **(F−DECK)**

COMPLAINT

Fauquier County operates and runs a dump behind 6779 Kirk Lane, Warrenton Virginia on residentially zoned property and allowed charges to be brought against us in Fauquier County, while the summonses were in Loudoun. The sheriff had to stamp the back of a different page because the actual summons page was in the county in which the lawyer's firm is based.

The renters were not required to comply with the covenants and yet we were enjoined into the same suit.

I built one steel box in the bed of a truck for an executive transport, and they operate at least ten steel boxes within a few hundred feet for commercial/industrial on residential property which make constant noise all day.

Not only has no action been taken against the homeowner who rents out the land for that purpose, but Fauquier County knowing it was illegal still actively pay to abuse their own rules and regulations.

The zoning office said it was "grandfathered" but the original two bins is a far cry from the ten plus bins that now reside on that residential strip.

The covenants claim a common area for storage was to be provided, and that is the only reasonable spot to put it, and that the rent generated in storage would go to Snow Hill yet it still does not exist. Fauquier County is stealing from our neighborhood and actively running commercial operations which make the road dangerous and destroy the environmental sanctity of the neighborhood.

They have no right to claim I cannot work on a private project of a much smaller and easily comparable nature, while allowing others to break the same rules within three hundred feet.

I spoke to Holder Trumbo, a County Supervisor who said there were no plans to move it and it's convenient.

It's highly inappropriate.

They've made my backyard a loud and noxious place to live and have increased even since I've been here over the past 5 years. The sound of bottles is constant even above the highway noise. The only projects I can feasibly enjoy are almost required to make noise as the noise you generate is intrusive to any quietly enjoyable activities.

Fauquier County drops giant bins that create booms reminiscent of revolutionary war cannons every morning between five A.M. and six A.M. I'm not convinced you aren't polluting our adjacent stream and pond with residual liquids that leak out, and you create horrible traffic problems. Every other day horns blast out over the highway as big rigs and fast moving vehicles are suddenly hindered on a major two lane highway by vehicles leaving the dump site in much higher numbers than is reasonable, at slow speed. It takes a great many vehicles over 500 feet to simply get up to road speed. At our exit, suddenly vehicles lunge around the slow moving vehicles and try to make up for lost time by shooting up the right lane making crossing or even merging onto route 29 very challenging and stressful. The distance between the dump site and main entrance isn't far, so as the high speed vehicles merge into the right lane, at 55 to 70 miles

per hour, they're within perhaps a hundred feet of you with no recourse as the vehicles in the left lane they're trying to pass are now blocking any avoidance.

They know it isn't right. They need to give us back our neighborhood and move the dump sites to one of their neighborhoods if they can't find somewhere better and see how they like people constantly driving through their roads and the incessant rattle of cans and bottles being dropped from six feet in the air into steel bins all day.

You put a lot of careers at risk by pursuing charges that had not been fully vetted, and by not ensuring before charges were brought that there was legitimacy behind them. If due diligence were done you would have known that Fauquier County could not reasonably prosecute. The nature of these charges lacked due process, appropriate timeframes, and reasonable causality in the covenants. You asked a twenty six year old, through proxy, to work double shifts and to move a dangerous vehicle to ensure the homeowners and renters were not brought into legal actions that could adversely affect their livelihoods. The HOA and management asked me to move a vehicle which was extremely dangerous to move at the time had I not continued to push against the gross restrictions to continue the alleged illegal "trade work" on a non commercial privately owned vehicle. I was strong but the next twenty something year old may not be, and you may get someone killed by not providing a reasonable hearing stage and allowing non-vested parties to be drawn into court proceedings without first attempting to request of the individual in alleged non compliance first to answer via a request for response to a summons. If I, the alleged instigator, being the party not in compliance, and enjoined in this suit, were the only one filed against, a basic hearing would have illuminated these indecencies, but from the very beginning, Snow Hill and SFMC used the threat against non vested parties and defamation to try and force a solution knowing the homeowner had no understanding nor rationale to be drawn into a court action. The homeowners were repeatedly sent and asked to sign certified papers as a part of this assault and affront meant to alienate them from us and force compliance without cause by SFMC and the HOA.

There's very little guidance in the State ordinances in regards to this set of HOA board misbehavior and not a single attorney listed on the BAR referral line deals with homeowners associations, yet the courts in this state seem to think that allowing both the renter and homeowner to be brought forward is an appropriate format for the pursuit of justice, and I adamantly disagree. In this case, it allowed a lot of really nasty dialogue and confusion to plague a very simple case of harassment and defamation and lead to a situation in which any morally inclined individual would waive their rights to justice to protect those not involved.

What if an employee at a local restaurant gets off work walks into the parking lot and finds a twenty dollar bill at the same time as a patron of the restaurant? He claims it is his. It's a windy day, it could be, but the employee claims it. Will the courts allow that patron to sue the

restaurant because one of their employees stole from them? Will the courts allow the patron to sue the property owner? The matter involves the customer and an off duty employee, what vestment beyond information could the patron (plaintiff) possibly derive from drawing the establishment into proceedings? The restaurant didn't steal from that individual, and until the court proves that theft occurred by that individual, how can the court reasonably defame the restaurant by allowing charges to be brought against the actions of an employee not under their control or even in their service at the time? Is the restaurant in control of the behavior of their off duty employees?

The homeowners are required to protect the rights of renters to live happily under the same covenants the homeowners are. Unless the HOA proves in a court that the renters are not in compliance, there is very little the homeowners can do without incurring large liability. If the homeowners failed to provide the covenants, then perhaps it would be different, but not only did they convey the abridged covenants, but the full covenants and by laws were requested and denied, and were ultimately the responsibility of the renter to both procure and pay for.

The tenants offered to accept their civil charges, and conveyed that to one of the homeowners, who stated he conveyed it to the board and was told it could not be done that way and that they were required to sue him. The BAR referred attorney that was requested for additional information stated that renters may not be required to comply with the covenants. This concept seems nonsensical. The homeowner can be sued anytime a tenant does something? The HOA should have to prove that the renter or individual in question is in contention through court proceedings before involving the homeowner in any way, at which point whatever the court demands of the renter, must be complied with or the homeowner must take action or face a suit as well, but to fail to bring any complaints directly to the renter, then sue the homeowner just seems illogical and borderline mentally deficient. How can a renter be required to show the homeowner proprietary technology or artwork to be able to respond to HOA board allegations? This wreaks of personal privacy violations. If a board member is also a member of a private corporation, they can lean on the homeowner to get a close up view of a new song, painting or technology?

The HOA didn't even cite the reasons next to the covenant violations. They simply cited fragments of covenant and implied I was out of compliance. The main rationale for the case was that my actions made it hard for them to pursue other people in the neighborhood. They didn't list the vehicle as recreational, and it isn't titled, nor could it be titled or insured in the State of Virginia as such, the original hearings were in reference to a commercial entity though none was ever filed or run from this property, nor are there any commercial markings on the vehicle.

Can one lose job opportunities by not immediately complying with any request by any governing authority no matter what their claim is, as long as they can implicate the county and state in their misdeeds? Will the county proceed with filings and court motions without any recourse or hearings prior to the actual filing and without any factual evidence of wrongdoing to support the claims? Also, could a homeowner lose job opportunities should they fail to comply with every HOA request no matter how frivolous and be put in legal peril by either failing to take potentially illegal action against the renter, or face charges in court, calling them from possibly hundreds of miles away to attend hearings during work hours in the process of trying to get to the bottom of an issue that has nothing to do with them?

Should I not have responded to anything, and allowed the HOA to draw my homeowner into legal action over commercial activity, with the knowledge that there were no commercial operations? How would Fauquier County have handled that situation? It's a big truck, and welding is not understood as an art form, I don't have any issue with the HOA lifting the sword and word of law against me but why were they capable of using it against others in my name?

I will prove beyond a reasonable doubt that the court could not have reasonably prosecuted the case, and that the case was baseless, and it's my intention to prove, if necessary, that allowing such charges to be brought against uninvolved third parties constitutes the equivalent of an inability to provide a fair trial because we couldn't even get to the trial without putting others in the line of fire. In this situation, not only was it improper to bring the homeowners into action, but there were multiple changes to the original allegations for the same items and projects, none of which were founded in truth or written in the original covenants.

Fauquier County needs to come into compliance with its own laws, and cease from filing charges against homeowners in the wrong jurisdiction, that are not in contention with covenants, while actively breaking their own rules and allowing HOA's and management groups to allow private rental and use of residential land for commercial and industrial use on land designated for by covenant, a common space. The rent generated from the common space is to be used by the HOA to better our community. They are not just breaking zoning laws, Fauquier County is actively stealing from our community by not allowing that land to be used the way it was intended, without any intention of fixing their behaviors, and they're now prosecuting without any review or due process any entity that stands to create issues for their illegal operations. How can I oppose these constitutional violations to pursuit of happiness and equality, while the homeowners association holds a gun to the head of my homeowners in a court whose government and officers have allowed the same behavior without threat to operate for years? The court set up a situation in which the truth is very hard to find by allowing the HOA and its affiliates to bring baseless charges to people not involved, evident by the lack of due process or actual violations by those organizations

I request that Fauquier County not allow any charges of this nature against the tenants or homeowners of 6779 Kirk Lane until the dump has been moved and a common area constructed as was dictated by the Snow Hill Covenants.

I also request that in the future, Fauquier County should only allow charges against renters in valid rental agreements until such a time as the associations bringing the charges have proven in a court of law that the renters or tenants are out of compliance with covenants or local laws. The homeowner is then required to become involved either voluntarily or in court, but not before the facts are heard as these local organizations and their management companies have proven their inability to follow adequate legal guidelines for hearings or the acquisition of truth in the process of serving their personal whims and bias. The courts should then formally notify the homeowners of the outcomes of those hearings, should the outcome be against the tenant(s) but no action should be required at the hands of homeowners until the tenants have been heard and or tried in a court of law, to prevent the court from creating the basis for bullying under false pretense. Allowing charges against uninvolved third parties, prevented from action by binding rental agreements is absurd and allows the uneducated and illiterate to be manipulated and coerced into the bidding of any board or association with intent and formal letterhead. If it continues local government will have someone evicted and affronted under false pretense incurring unnecessary cost and hardship to those with less understanding if they succeed, or to the tax payer if they do not. I live here; I deserve to be able to request the right to be happy and opportunity to interact with my community, and should not be punished for having a temporary status. I've lived here longer than some of the homeowners have, and yet I'm treated as a vagrant because the system is set up to intentionally alienate me from my homeowners should I complain about the nature of the hypocrisy.

Christopher Demitry

Vs.

Snow Hill Homeowners Association


Complaint

Snow Hill association showed a very clear animosity towards my freedom to pursue happiness and failed to provide due process, or rationale for bringing legal action in the covenant fragments they referenced.


I asked for the original covenants and the board told me they probably didn't exist and none of the members had them. I found them and paid Fauquier County the $50 fee to read through them. The HOA must have found them soon after as well because I was removed from their e-mail lists and they started sending threats and warnings directly to our homeowners citing bits of vague covenants and lying with unfounded illegitimate information. They claimed my truck was commercial, and my endeavors were also commercial/ and or trade activity, though no business had been formed, nor selling or trading had occurred.

They cited me for a small forklift I had parked less than a week in comparison to the 107k lb excavator they parked directly at the end of my driveway for a month. They listed it as commercial equipment even though it clearly belonged to Sunbelt Rentals and was a temporary rental.


SFMC and Snow Hill HOA summoned us to a meeting at eleven in the morning on a work, but would not allow the renters to go in or hear our responses to their defamatory allegations. The following was relayed secondhand by the homeowner. They stated that the truck was above a certain size and fell into the commercial vehicle category due to the licensing restrictions but the information was false. They claimed it was commercial in the rationale for the meeting, then claimed it was recreational in the same hearing, but kept the original time frame. They gave us thirty days to move the truck, and half of the time it was very windy and raining, conditions in which decent welds could not be made, creating other risks. They then repeatedly ordered that I stop welding and working on the truck. Again, just to get it safe for transport, the truck had to be fully constructed in the ways originally intended or a catastrophic failure could have occurred, possibly resulting in an accident I could not take liability for.  Their information was false, their threats were capricious and arbitrary, they allow the dump because it is "convenient" which they acknowledged to the homeowner was said, because I have them recorded as saying it, and yet had the audacity to cite me for one steel bin in a truck that had been on the property for over a year before I started working on it. At no time were the renters ever directly approached by the HOA, except via formal letter to appear at a hearing we were not allowed access to. No direct neighbors complained (singular exception being once asked to keep music down), nor did they ask me to

limit work to certain times, nor were any letters or warnings conveyed at any point to me except through the homeowners. I don't fully understand how charges could be brought against parties that were never directly notified, to assume that the homeowners would convey that information is unreasonable.

I was also cited through proxy for building a gate to hide the truck as people were regularly stopping and parking at the end of my driveway and it got so bad, that I could not go outside or focus on work without looking up and seeing a car parked at the end of the driveway.

The gate was made of trees and swung open and shut. They cited us for planting trees, and then denied the gate because a hearing was not requested. A HEARING from the people who are actively denying me access to pursue my happiness, my art, and my personal project, that then denied it without asking any questions, without requesting I put in a request, under the premise that is was done inappropriately. That is a valid depiction of how the hearing would have gone. This was a temporary privacy structure built because they were complaining about welding, to allow the continuance of welding without offending to enable the safe transportation of the vehicle. It was put together with little welding over the course of half a day in an attempt to buy more time and prevent the homeowners from being brought to court while trying to come into compliance.

They made vague allegations about safety and sparks and welding generally. The welding and all other processes produce the same decibel rating as a lawn mower, leaf blower, or chain saw. In school there were twenty or more welders in a room of about sixteen hundred feet with little circulation and white walls. If the State of Virginia says it is appropriate for me to be welding back to back, surrounded by white walls, with a plasma cutting device aimed out the shop door towards the offices and common area, the hundred plus feet from my project area to any publicly accessible area is more than appropriate. I was denied access to audit welding classes after complaining about the conditions and blatant safety violations. I am very aware of the potential issues and safety concerns of welding, and I was easily ten times more cautious than the State of Virginia in all regards. We had people welding on beams above our heads during class hours in the process of maintaining the building.

The expedited timeframe dictated by the HOA and SFMC required me to work later than I wanted to. I was happy to work during the hours that were reasonable but I was working double shifts in obscenely miserable weather and it had to either start very early or go until seven or eight pm. Steady progress was made from the very start. I missed an entire season of surfing and was miserable but had committed to what I thought was going to be a weekend project. I quickly realized the project would take at least a month, and by the third month realized I wasn't qualified to give a reasonable timeframe. Constant issues with equipment, procurement and other issues a hobbyist has that a commercial entity would not slowed me down. I was injured multiple times on the job and found myself spending hours upon hours just moving things around and setting them back up to do the work. Ultimately I had to leave the truck visible from the road, though I didn't want to, because moving it was creating problems with the fitment. Every time something had to be moved around or covered up it would add an hour or more to the project. When it would rain, sometimes it would take days before it was finally dry enough to work. I enjoy welding. My neighbors all specified they were fine with it and supportive. I have a

statement from the former neighbor that I was a good neighbor and their house sold during this project. I live close to Rt. 29 and the highway and dump create more noise than I do.

Ultimately the project became an absolute hole of pure stress, exhaustion, and brutal injuries but stopping meant my homeowners and family would be potentially punished in their careers for my actions and I pushed on. I finally went down to the end of the driveway and told the head of the HOA she was looking at a harassment suit if she continued parking at the end of my driveway. It got to the point of stalking, and she leveled with the homeowner, in the meeting we weren't allowed into, that she wanted a restraining order. I have footage of these people constantly taking pictures and parking at the end of my driveway, yet they defame me with false allegations. If I parked at the end of her driveway every other day with a scope and camera I'd be charged with harassment and stalking immediately. They took turns passing my house regularly, playing aesthetic protection espionage games even though the majority live over a mile away and have their own entrance much closer to their addresses. They were driving well out of their way to make passes by my house, at an exit which is harder to use.


I am not keeping inventories or stores.

I have not had commercial projects or programs.

I have not done trade activity.

I have not had a commercial or recreational vehicle.

I was given only thirty days to move the vehicle even though they knew that they were creating a potential life and death situation during any mode of transport that could have resulted in a million dollar damages lawsuit for personal injury without allowing me to continue welding.

They did not provide the same stipulations or legal expectations to the other homeowners.

They harassed and stalked me for months, and took pictures of my license plates, vehicles and personal technology on private devices that were networked, sharing personal proprietary information with undisclosed numbers of people.

They defamed me.

They brought me into legal matters that I was not required to comply with.

They threatened me.

They allow a dump site of commercial/industrial capacity to not only operate, but also allow private rental agreements for this property which makes gross amounts of noise all day with bottles dropping, bins being loaded and unloaded, and constant traffic issues.

They failed to provide me with the covenants I formally requested in an HOA meeting, defamed me after I left the meeting for attacking them, then found the covenants, failed to provide them and used them against me.

Those covenants did not specify that any of the activities I was conducting were in contention yet they used vague references and false allegations to imply that I was in contention to the homeowners who have no vestment. The board did it without hearing the renters and both dropped, and brought new charges to the same hearing without giving the homeowner a chance to relay the information before providing a finding of violation and ultimatum.

Trying to convince the homeowners that the renters are violating covenants while also implying they are liable is defamation in that, telling someone who has a working relationship with another, blatantly false information in the process of trying to leverage or manipulate that business arrangement to get a positive outcome for your party, is defamatory by both intent and outcome.

Eventually both the recreational vehicle and commercial vehicle allegations were lost and it was quoted to me by the homeowner directly after the meeting, that the truck was just "too big" and had to go. There is no covenant stipulation about size, and if there was technically by county rules the truck would be "grandfathered," but they never tried to change or alter the covenants to add a size restriction which implies targeting. They never held hearings about adding a rule of size restriction to the covenants. There are many other large vans and large trucks in the neighborhood.

If the homeowner had sued me for having a commercial vehicle, the original charge, and it was found that it was not, but I was evicted or punished, they would have had to then sue the HOA?  This creates a lot of confusion and undue cost. This tactic was implemented only to circumvent the legal system and force action by fear through lack of information.

Example: I have big ethnic/foreign cook out on the front yard. Board tells the homeowner I'm in violation of covenant but it is later found that racism and prejudice is the actual basis, yet the homeowner takes the legal threats from organizations like SFMC and their formal letterhead seriously, and pursues legal action, how much harder is it to then litigate? Someone has to pay for the move, for a decent percentage of the rent at the new house, and there are three separate parties who have now incurred legal costs over a truth that could have easily been found had the renters been called in to speak.

The board brought no direct neighbors to the hearing that were disgruntled, and the eleven am time slot would imply they didn't want people showing up, because if they were required to have a vote, they probably wouldn't have done it in the middle of a work day. If neighbors had shown up with complaints, perhaps they would have asked me to stop making noise after or before a certain hour, at which point, I could have explained that I would prefer not to be working at six or seven at night but the well being of the direct neighbors was taking second seat to the requests of people that live over a mile away, who then chose to walk or drive past my house more regularly. To put things into perspective, they actively dump bottles on a regular basis behind my house and never complain, but then go out of their way to be affected by my activity, while creating situations in which to come into compliance, I have to make more

persistent sound generally. This makes life less enjoyable for the direct neighbors and potentially creates a conflict that didn't need to exist that isn't understood as imposed which is then absorbed as discourteous. That's how the board creates real community problems, by disassociating the neighbors from each other and failing to impart fair or even appropriate resolution dialogue. The neighbors think I'm very inconsiderate and I think they all hate my projects yet our primary quarrel has nothing to do with each other and everything to do with the board. The board is notorious for crying foul and claiming scores of calls and complaints, yet rarely have people who show up and don't sign their names to actions. If they cannot generate the majority of signatures on the board, should they be able to file anything, and if they chose not to have a vote of majority, shouldn't those members who voted and signed in favor of legal action be held responsible? In this case the damages were in excess of $20,000 for just equipment and rentals that had to be held for weeks at a time just to ensure that if a point in the project were reached that required them, the project wouldn't stop. I was using the equipment for maybe an hour a day, because I didn't have the time to wait for everything to line up perfectly.

Request

My first request is that all parties on the board at the time of court filing not in active service in the US military, law enforcement, or another governmental organization resign within 60 days.

The board members will not photograph, nor park by, nor loiter by the areas directly adjacent to the Kirk Lane property.

Snow Hill will use a film camera going forward in their investigations or claims against my neighbors to protect their privacy until a court has ruled, and prevent sharing of information that could lead to retaliation, which while passive, occurred in this case in the form of dozens of neighbor's cars driving through and parking at the end of my drive.

They will delete and destroy all pictures they have of my projects, vehicles, and other personally identifiable information.

That right to prosecute will be waived if the original agreement is accepted, as long as it was unintentional, before the year 2018, and all copies or networked versions are deleted and requests to delete are sent to anyone it was dispersed to. It is my art to release at my time. Musicians work very hard to keep their music private, and I've worked to keep mine private.

Right to prosecute any other entity who acquires and or uses my art and designs will be retained.

They will permit my gate to be reconstructed, will not complain about anything I do at the property in regards to the original projects or anything of similar nature unless two neighbors on my road have issue and have not been approached by any board. There were no complaints about the property or upkeep until the projects began. If any other issues arise with the new board members, I ask that they first bring any charges or requests about my vehicles, projects, or gardening to my attention and those matters will be handled between the board and renter before involving the homeowners of 6779 Kirk Lane. I also ask

that no further litigation in regards to the actions of the renters is brought to the homeowners unless the homeowners make alterations or take actions, which are understood to require a request that would illuminate the nature of the direction from which the changes or potential infractions are coming, and my protections of the homeowners will no longer be valid.

No further commercial work, or commercially tagged or licensed vehicles will be at the property, but the original work was cited as commercial under the initial hearing's directive and their ability to streamline that process created the need for tens of thousands of dollars in gross unnecessary expenses, to remove others from contention while not creating dangerous road hazards. Someone could have been seriously injured had the truck moved as requested before being made fully road worthy. I had no intention of creating commercial work here, or pursuing it beyond this segment but in this case, to simply finish and come into safe compliance with these unreasonable demands created extensive purchasing and support that a personal hobbyist cannot afford without return. While I will not be conducting transactions or keeping commercial vehicles on the premises, the nature of what was involuntarily demanded has shifted and to ignore the tax benefits that purchases like tools can provide would be foolish. The ability to turn into a commercial operation to come into compliance is surprising but was not intended.

Should this be a point of contention I will absorb the cost and will pay the extensive taxes incurred, but I ask for a judgment as to the moral ramifications of filing small business expenses on personal purchases that become business expenses at legal behest that were not originally intended as such.

The board will work as hard as they did against me, against the dump site and turn it into the community storage space originally provisioned in the covenants so that if they have an issue with something someone is keeping at their house, they have a place to move it easily and safely both generally, and temporarily without creating these situations while the Homeowners Association, homeowner, or renter is discussing them.

The board should also offer at least two meetings a year in which votes are held. The board may receive a complaint or decide to unilaterally pursue action, but if the homeowner and board cannot reach a common ground, it should be carried to the annual meeting to be voted on by the members. If the board only has two supporting association members, and the homeowner making the request brings twenty, the majority vote should stand unless blatant illegal actions are occurring, at which point the majority board members should each sign their names to whatever action they pursue. A board member stated that they couldn't understand why proxies were still required as the homeowners didn't understand them, didn't show up to meetings and "we do all the work." Due process is not a requirement because no responsibility is understood from behind the title of "board member." To avoid liability, a majority vote is always advisable as it lends credence to the claims while putting the burden of responsibility on the collaborative.

Finally, the board will approach the renters first and have a hearing, and pursue the renters legally if they will accept the civil charges amicably and offer that as an option before pursuing the homeowners as the homeowners have no stakes in that stress. If the renters are found in contention, or fail to accept the charges, the homeowners are then liable if the situation is not remedied but to remove a renter

from the e-mail list and consistently berate them through concerned but restrained (by rental agreement and homeowner/tenant law) proxy is improper and leads to horrible outlooks between neighbors and breeds dissension between the homeowner and renter. It also leads to miscommunications and a longer process to attain the truth in such matters.

Christopher Demitry

Vs.

Virginia Department of Transportation


Virginia Department of Transportation destroyed a fence on private property without permission from the homeowner. They also stated you could not do a road speed survey on public roads, in a home owners association, to prevent the ruffling of feathers. You are not hired by the homeowners association, nor does the HOA have control over public roads or private property. The fence still has yet to be fixed. They laid all the blame at your door step, and you never came to mine to ask before destroying something that could have been very easily protected and reconstructed had you not used a 107lb excavator to destroy. I truly do not understand how you could have easily a half hour or hour of conversations with the HOA, and never once knock on our door to ask if we had any requests for the small fence you mangled. They then used that opportunity to add your destruction of property to their list of claims in the process of trying to defame us to the homeowner. Anytime you destroy something on someone else's property, please approach the owner of that property and request their guidance and assistance in handling the situation appropriate to avoid unnecessary issues and problems

Christopher Demitry

VS.

SFMC

SFMC procured authoritative action notices not in compliance with the codes or covenants of the neighborhood of Snow Hill and pursued action that was illegal by nature at the behest of a neighborhood. They accrue more than any other firm in the area, which allows them to be more aggressive than any other management company due to their ability to hire expensive defense should the need ever arise. They give the impression of being a legal entity but lack the legal knowhow and expertise to effectively serve the highly inappropriate actions they take part in.

Their misconduct must end.

Anytime you imply legal action, you must be willing to follow through, but first, you must be on solid legal ground. They started by stating I was conducting commercial activity, swapped over to recreational vehicle, then said the vehicle was too big dropping all their original allegations and maintaining the original hearing's thirty day time frame without a secondary hearing to discuss the full one hundred and eighty degree reversal. They also instructed and threatened the homeowners that if I continued to weld, to bring the vehicle into roadworthy and transportable status, they would be sued.

They created a potential million dollar personal injury/damages liability for me should I have complied with their original timeframe. Such behavior is unacceptable. They are the paid organization that facilitates the bullying of small entities through the implication of legal understanding they do not have and I will prove it in a court of law should they fail to remedy the situation adequately.

They will apologize through certified mail for continually sending formal notices to only the homeowners through certified letters devised to intimidate and coerce.

They will also resign from the Snow Hill Contract.

Christopher Demitoy
6779 Kirk Lane
Warrenton, VA, 20187

703-915-7321